_____ FILED _____ LODGED
_____ RECEIVED

Aug 04, 2025

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

Magistrate Judge David W. Christel

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

DEREL GABELEIN,

Defendant.

CASE NO. MJ25-5301DWC

COMPLAINT for VIOLATION

Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A)

BEFORE the Honorable David W. Christel, United States Magistrate Judge, U.S. Courthouse, Tacoma, Washington.

The undersigned complainant being duly sworn states:

## COUNT 1

### (Conspiracy to Distribute Controlled Substances)

Beginning at a time unknown, and continuing until on or about August 4, 2025, in Pierce, King, Snohomish, Lewis, and Island Counties, within the Western District of Washington, and elsewhere, DEREL GABELEIN and others known and unknown, did knowingly and intentionally conspire to distribute controlled substances, including:

Complaint - 1
_United States v. Derel Gabelein_
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

methamphetamine and N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), substances controlled under Title 21, United States Code.

It is further alleged that DEREL GABELEIN's conduct as a member of the conspiracy charged in Count 1, which includes the reasonably foreseeable conduct of other members of the conspiracy charged in Count 1, involved 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine.

It is further alleged that DEREL GABELEIN's conduct as a member of the conspiracy charged in Count 1, which includes the reasonably foreseeable conduct of other members of the conspiracy charged in Count 1, involved 400 grams or more of a mixture or substance containing a detectable amount of fentanyl.

All in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A).

## COUNT 2

### (Possession with Intent to Distribute Controlled Substances)

On or about August 4, 2025, in Island County, within the Western District of Washington, DEREL GABELEIN did knowingly and intentionally possess, with the intent to distribute, controlled substances, including N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), a substance controlled under Title 21, United States Code.

It is further alleged that the offense involved 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine.

It is further alleged that the offense involved 400 grams or more of a mixture or substance containing a detectable amount of fentanyl.

It is further alleged that this offense was committed during and in furtherance of the offense alleged in Count 1 (Conspiracy to Distribute Controlled Substances).

All in violation of Title 21, United States Code, Sections 841(a)(1), and 841(b)(1)(A).

Complaint - 2
*United States v. Derel Gabelein*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

And the complainant states that this Complaint is based on the following information:

I, Daniel Richter, being first duly sworn on oath, depose and say:

**AFFIANT BACKGROUND AND EXPERIENCE**

1.      I am a Special Agent of the Drug Enforcement Administration (DEA), currently assigned to the DEA Tacoma Resident Office (TRO) in the Seattle Field Division. I am a criminal investigator of the United States within the definition of 18 U.S.C. § 2510(7) and am empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21 and Title 18 United States Code.

2.      I have been a DEA Special Agent (SA) since August 2021. I received formal training at the DEA Basic Agent Training in Quantico, Virginia. The four-month Basic Academy included comprehensive, formalized instruction in, among other things: basic narcotic investigations, drug identification and detection, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, and undercover operations.

3.      Prior to my employment with the DEA, I worked as a Uniformed Officer, Narcotics Detective, and Sergeant with the Michigan State Police from October 2012 to August 2021. Throughout my employment with Michigan State Police, I received numerous training courses focusing on narcotics investigations and narcotics identification. I obtained training through the DEA on clandestine manufacturing of methamphetamine, fentanyl, 4-Methylenediozymethamphetamine (MDMA), Phenyl cyclohexyl piperidine (PCP), and marijuana extractions.

4.      During the course of my law enforcement career, I have been involved in investigations of numerous criminal offenses, including the offenses involved in the current investigation. I have participated in criminal investigations of illicit drug trafficking organizations, ranging from street-level dealers to major dealers, to include

Complaint - 3
*United States v. Derel Gabelein*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

drug trafficking organizations linked to Mexico-based organizations. These investigations have also included the unlawful importation, possession with intent to distribute, and distribution of controlled substances; the related laundering of monetary instruments; the conducting of monetary transactions involving the proceeds of specified unlawful activities; and conspiracies associated with criminal narcotics offenses. These investigations have included use of the following investigative techniques: confidential informants; undercover agents; analysis of pen register and toll records; physical and electronic surveillance; wiretaps; and the execution of search warrants. I have also interviewed defendants at the time of their arrests and have debriefed, spoken with, or interviewed numerous drug dealers or confidential sources (informants) at proffer interviews who were experienced in speaking in coded conversations over the telephone. I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by drug traffickers in the course of their criminal activities, including their use of cellular telephones and other electronic devices to facilitate communications while avoiding law enforcement scrutiny.

5.      The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement personnel; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the Application for a search warrant and pen register/trap and trace device, it does not set forth each and every fact that I or others have learned during the course of this investigation.

PROBABLE CAUSE

6.      In September of 2022, the DEA began conducting a criminal investigation of a Mexican drug trafficking organization (DTO) operating out of Tacoma, Washington,

Complaint - 4
*United States v. Derel Gabelein*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

with ties to Nevada, Oregon, and California, regarding possible violations of 21 U.S.C. §§ 841(a)(1) and 846. Agents believed this DTO and its members were responsible for distributing methamphetamine and cocaine in the Western District of Washington and elsewhere. As the investigation progressed, investigators identified two brothers, Rosario and Francisco CAMARGO BANUELOS, as leaders of the DTO who coordinated drug trafficking taking place in the Western District of Washington and elsewhere. The DTO is referred to herein as the CAMARGO BANUELOS DTO.

7. On June 25, 2025, a Grand Jury in the Western District of Washington indicted several members of the CAMARGO BANUELOS DTO.

8. On July 30, 2025, a search warrant to search several locations related to the CAMARGO BANUELOS DTO was authorized including a residence associated with **Derel GABELEIN** located at 22899 WA-525 Greenbank, WA 98253, identified herein as Target Residence 2.

9. During the course of this investigation, agents established that **GABELEIN** was a regular drug customer of the CAMARGO BANUELOS DTO purchasing large amounts of controlled substances. Below is a summary of **GABELEIN's** involvement with the DTO.

### Communications Between GABELEIN and DTO Leader

10. On June 15, June 19, and July 12, 2024, following the issuance of a lawfully authorized federal wiretap order, agents intercepted text messages and a phone call between known DTO leader Francisco CAMARGO BANUELOS, the user of TT56, and (425) 666-8317 (Target Telephone 79 or TT79), a phone number that has been listed in a report of a police contact with **GABELEIN** as belonging to him. TT79 was also identified as **GABELEIN's** phone number through Facebook records obtained from a known DTO customer (referred to herein as "unindicted co-conspirator 1" or "UC1"), in which **GABELEIN** provided TT79 to UC1 in response to her asking for his phone number. In each of the three text messages and in the phone call, Francisco CAMARGO

Complaint - 5
*United States v. Derel Gabelein*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

BANUELOS directed **GABELEIN** to switch to Signal to communicate.

11. I am aware that Signal is an encrypted application-based communication service which is often used by drug traffickers because law enforcement has little ability to obtain records related to Signal accounts or communications. Based on my training, experience, and knowledge of this DTO, I know members of this DTO, including Francisco CAMARGO BANUELOS, have used such encrypted application-based communication methods, particularly WhatsApp, to communicate with each other about drug trafficking. For example, during a-search of a phone used by DTO member Jose Ruben MEJIA ORTIZ's phones, agents found WhatsApp conversations between MEJIA ORTIZ and Francisco CAMARGO BANUELOS's TT56 in which the user of TT56 directed MEJIA ORTIZ to deliver pound quantities of drugs (likely methamphetamine). Based on my knowledge of the DTO and Francisco CAMARGO BANUELOS's drug trafficking methods, I believe that he and **GABELEIN** were also likely communicating about drug trafficking using Signal.

### Interception and Surveillance Indicating DTO Made
### Deliveries to Whidbey Island for GABELEIN

12. On June 15, 2024, the same day as the phone call between **GABELEIN** and Francisco CAMARGO BANUELOS, agents intercepted a phone call between Francisco CAMARGO BANUELOS's TT56 and Juan Carlos GARCIA OLAIS, a DTO member and the user of TT80. During the call, which was translated from Spanish, Francisco CAMARGO BANUELOS told GARCIA OLAIS that "the guy" was going to "the island." A judicially authorized location tracking device on a vehicle known to be used by the DTO (TV12) indicated that TV12 had departed a residence at 194th Pl SW in Lynnwood, WA, and had driven to the Mukilteo ferry port. 194th Pl SW in Lynnwood was later the subject of a search warrant where large quantities of fentanyl pills and methamphetamine were located, and which was later determined to have been used by DTO member Jorge BONEO NIEBLAS. Based on electronic surveillance, TV12

Complaint - 6
*United States v. Derel Gabelein*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

appeared to use the ferry to cross over to Whidbey Island, arriving there at around 7:15 p.m. Upon arriving at Whidbey Island, TV12 drove north to a residential address that, based on records of the Island County Assessor's office, appeared to be within the property boundary of 5474 Wilkinson Road, Langley, WA. TV12 arrived there at about 7:24 p.m. TV12 left that residence 20 minutes later and took the ferry back to Mukilteo.

13.     Based on these communications and the surveillance of TV12, I believe, based on my training, experience, and knowledge of this investigation, that the DTO arranged for a courier, likely BONEO NIEBLAS, to drive TV12 to Whidbey Island to conduct a drug sale to **GABELEIN**.

14.     On June 19, 2024, at 1:17 p.m., agents intercepted a text message from Francisco CAMARGO BANUELOS's TT56 to **GABELEIN's** TT79 directing **GABELEIN** to use "Signal bro." Later, at 7:20 p.m., the TRO wire room intercepted a phone call between Francisco CAMARGO BANUELOS and BONEO NIEBLAS, in which Francisco CAMARGO BANUELOS directed BONEO NIEBLAS in Spanish to "grab two more bags." Francisco CAMARGO BANUELOS and BONEO NIEBLAS discussed the total that BONEO NIEBLAS should have, and Francisco CAMARGO BANUELOS told BONEO NIEBLAS that he should have, "Ten for the guy and two for the guy that lives at the hotel." Based on my training, experience, and knowledge of this investigation, I believe that in this conversation, Francisco CAMARGO BANUELOS was directing his drug courier, BONEO NIEBLAS, the user of TT78 and driver of TV12, to prepare for two drug sales, one to GABELEIN, and one to a customer at a hotel. Minutes prior to the conversation between Francisco CAMARGO BANUELOS and BONEO NIEBLAS, agents intercepted text messages between Francisco CAMARGO BANUELOS and a phone used by DTO customer John HARDMAN, the user of TT81, in which HARDMAN asked for "two boats" (a "boat" being common drug trafficking terminology for a quantity of 1,000 fentanyl pills), and gave the address for an Extended Stay hotel room in Lynnwood. Agents responded to the hotel and saw BONEO

Complaint - 7
*United States v. Derel Gabelein*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

NIEBLAS leaving the lobby, getting into TV12, and driving away, consistent with my belief that he had gone to the hotel to deliver fentanyl pills to HARDMAN as directed by Francisco CAMARGO BANUELOS. Following the observation of BONEO NIEBLAS in the hotel parking lot, surveillance electronically observed TV12's location and saw that he was driving toward the Mukilteo ferry. Surveillance followed TV12 and at approximately 9:00 p.m., saw TV12 board the ferry that travels to Whidbey Island.

15.    After arriving at Whidbey Island, at about 9:28 p.m., surveillance saw TV12 drive down the driveway that led to 5474 Wilkinson Road, Langley, WA. TV12 disappeared down the driveway from view. Surveillance moved toward where TV12 disappeared and saw it parked amongst several other vehicles between what appeared to be a house and some sort of outbuilding such as an exterior garage or barn. Surveillance did not see anyone moving around however there was a car parked near TV12 that had its headlights on.

16.    On July 2, 2024, agents intercepted two phone calls between Francisco CAMARGO BANUELOS, using TT56, and GARCIA OLAIS, using TT80. The call, which took place in Spanish, was translated to English by DEA contract linguists. The portions of the calls relevant to this application are set forth below:

Session 1688 at 12:24 p.m.

TT56:    What was I saying? Hey, dude, the- the island guy called me.

TT80:    Uh-huh.

TT56:    Can you go… Can we go over as soon as you're done eating?

TT80:    What do you want me to take over there?

TT56:    It's gonna be the blues and eight waters, dude.

Session 1689 at 1:43 p.m.

TT56:    Hey, are you going to this island, dude?

TT80:    Uh, I'm just waiting for…

TT56:    The guy, he told me – he told me that it won't be until four or

Complaint - 8
*United States v. Derel Gabelein*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

five. [Clears throat]

TT80:    Oh, okay.

TT56:    I'm gonna send him a message.

TT80:    So? How's this thing going to go down? [Unintelligible]

[Voices overlap]

TT56:    Well, you'll bring him eight waters, and take, take… Take-take the waters and tell him that you ran out of that other shit yesterday… and, and, and… Tell him you ran out of them and shit… Tell him that you're gonna set a bunch aside for him.

TT80:    Got it. The same thing I tell everyone. [Giggles]

TT56:    That's right [Chuckles]. At least sell the waters.

TT80:    Ugh, someone else keeps calling me too. Fuck!

TT56:    I'm gonna send you the add…I sent you the address, dude. And I – and I – and I sent you a picture of the map so you can see what it's like… it's like a pen, like a, like a toll booth, you get me?

TT80:    Um-hum, from there I'll get in the line and yada, yada, yada.

TT56:    Yeah, dude, they'll tell you which line to get into, cuz there's hella lines, but they'll tell you which line to get in… Sounds good.

[Voices overlap]

TT80:    Dude! Don't talk to me about lines right now, cuz…

TT56:    [Chuckles] Well, just let me know in advance when you go so I can tell the guy you're on the boat and all that so he can be ready.

17.    Based on my training, experience, and knowledge of coded drug terminology, I know the term "blues" is often used in drug slang for fentanyl pills and the

Complaint - 9
*United States v. Derel Gabelein*
USAO # 2022R01047

term "water" is often used in drug slang for methamphetamine. In these intercepted conversations, I believe Francisco CAMARGO BANUELOS was instructing GARCIA OLAIS to prepare to take "eight waters" or eight pounds of methamphetamine to "the island guy," who I believe to be **GABELEIN**, the user of TT79. In this communication, Francisco CAMARGO BANUELOS told GARCIA OLAIS, "Hey, dude, the- the island guy called me." Based on the fact that no intercepted communications related to this transaction occurred prior to Francisco CAMARGO BANUELOS's conversation with GARCIA OLAIS, combined with TT56's prior directions to TT79 to use Signal, I believe the call Francisco CAMARGO BANUELOS referenced was a call that likely occurred on Signal.

18.    Later that day, a detective conducting surveillance saw TV14, previously known to be driven by GARCIA OLIAS, board a ferry at the Mukilteo ferry port. Aerial surveillance showed TV14 pulled into the driveway of 5474 Wilkinson Road, Langley, Washington, on Whidbey Island. TV14 pulled straight up to the same outbuilding TV12 where was previously seen parked. A moment later, an unidentified white male came up to the driver's side of TV14. A couple of minutes later, a male agents believed to be GARCIA OLAIS got out of the driver's seat of TV14, retrieved a black backpack from the trunk, and walked inside the building with the unidentified white male. A few minutes later, TV14 left the residence and traveled back across the ferry to the Mukilteo area.

### Investigation of TT79 and Surveillance of GABELEIN

19.    Investigators looked up Washington driver's license registrations under that name and date of birth and obtained **GABELEIN's** driver's license photo along with a registered address located on Whidbey Island. Investigators obtained **GABELEIN's** criminal history, which showed a felony conviction related to theft in 2016 and a felony arrest related to controlled substances in 2021. Further investigative research showed **GABELEIN** associated with another residential location, 22899 WA-525, Greenbank, WA (Target Residence 2). This residential address is located on Whidbey Island, WA

Complaint - 10
*United States v. Derel Gabelein*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

and is approximately 14 miles or 20 minutes of driving time to 5474 Wilkinson Rd.

20.    On August 1, 2024, electronic surveillance showed TT79 was in the vicinity of Whidbey Island. I and other agents went to Whidbey Island to conduct physical surveillance. At approximately 9:00 a.m., electronic surveillance showed that TT79 was approximately 30 minutes north of Target Residence 2 and appeared to be traveling south on State Highway 525 toward that residence. Surveillance drove past Target Residence 2 and saw that it was a gravel driveway directly off State Highway 525 that provided access to three residential locations, 22899 being one of them.

21.    Surveillance agents drove up the driveway to where Target Residence 2 was located and saw two vehicles parked near a residence. Surveillance ran both vehicle license plates and saw they were registered to **GABELEIN**. As surveillance drove back down the access drive toward State Highway 525 a grey Toyota truck pulled into the access drive and blocked my egress. Surveillance saw that the truck was being driven by a Caucasian male who wore sunglasses and that there was a female in the front passenger seat. Since there was no room for either vehicle to pass one another, the grey Toyota truck pulled off the road into some tall grass and allowed surveillance to pass. As surveillance passed they obtained the license plate of the truck and subsequently ran its registration. The truck was registered to **GABELEIN**.

22.    During this timeframe, electronic surveillance showed that TT79 stopped moving south and stayed within the vicinity of Target Residence 2. Over the next several hours, TT79 stayed in that same location during which time the grey Toyota truck did not leave. Based on these observations, I believe the driver of the grey Toyota truck was **GABELEIN**, the user of TT79.

23.    Based on the foregoing, I believe that the user of TT79 is **Derel GABELEIN**, a suspected drug customer purchasing controlled substances from Francisco CAMARGO BANUELOS. I also believe that **GABELEIN** is using TT79 to facilitate these purchases utilizing the phone-based application Signal.

Complaint - 11
*United States v. Derel Gabelein*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**Additional Surveillance Observations Related to GABELEIN**

24.     On August 19, 2024, at approximately 5:33 p.m., through electronic surveillance, TV12 entered the Whidbey Island ferry terminal area. TV12 crossed over to Whidbey Island and drove directly to 5474 Wilkinson Road, Langley, WA. TV12 was parked there for approximately two minutes and then was observed leaving the area.

25.     On August 29, 2024, at approximately 4:02 p.m., through electronic surveillance, TV12 entered the Whidbey Island ferry terminal area. TV12 crossed over to Whidbey Island and drove directly to 5474 Wilkinson Road, Langley, WA. TV12 was parked there for approximately twenty minutes and then it was observed leaving the area.

26.     On September 1, 2024, at approximately 9:42 p.m., through electronic surveillance, TV12 entered the Whidbey Island ferry terminal area. TV12 crossed over to Whidbey Island and drove directly to 5474 Wilkinson Road, Langley, WA. TV12 was parked there for approximately twenty minutes and then it was observed leaving the area.

27.     On March 22, 2025, at approximately 8:18 p.m., judicially authorized location information for TT106, used by BONEO NIEBLAS, entered the Whidbey Island ferry terminal area. TT109 crossed Whidbey over to Island and displayed in the area 5474 Wilkinson Road, Langley, WA. TT109 appeared to be on Whidbey Island for approximately 30-40 minutes before the device moved away from Whidbey Island.

**Facebook Records for UC1**

28.     On July 29, 2024, United States Magistrate Judge Theresa L. Fricke signed a search warrant authorizing the search of two Facebook accounts, one being for the account belonging to UC1, a known drug customer of the DTO.

29.     I reviewed information related to UC1's Facebook account and observed a conversation between UC1 and an account under the name "Derell GOBELEIN." I have viewed the Facebook page with this name and recognized the profile picture as **GABELEIN** based on my familiarity with his driver's license photo and surveillance photos taken during this investigation. In the Facebook conversation with UC1,

Complaint - 12
*United States v. Derel Gabelein*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

I observed that UC1asked for his phone number and the "Derell GOBELEIN" account responded with "425-666-8317" which is the number for TT80, a phone known to be used by **GABELEIN**. Based on the photo, the similar name used, and TT80 being passed, I believe that the user of this account is **GABELEIN**. I also observed that during their communications, UC1complained to **GABELEIN** that she passed him a "plug" and she wanted money from him. I also observed that UC1had sent **GABELEIN** a phone number, TT56. Based on this observation, I believe that UC1introduced **GABELEIN** to Francisco CAMARGO BANUELOS (the user of TT56) as a drug customer for the DTO. Furthermore, based on my training, experience, and knowledge of this investigation, I believe that when UC1was requesting money from **GABELEIN** for the introduction to her "plug," she was referencing Francisco CAMARGO BANUELOS, who is a drug source of supply. The term "plug" is common slang/street jargon for someone that is a high-level drug dealer.

30.    Near the end of the communications, I observed that **GABELEIN** sent a screenshot of a text message thread to UC1. The contact which whom **GABELEIN** appeared to be texting was "Rosendo V" (whom I believe to be Rosendo VAZQUEZ MEDRANO, a drug distributor associated with the DTO who has been indicted for his role in the drug distribution conspiracy). In this text conversation, **GABELEIN** told "Rosendo V" that "I paid for a half key of each and only got 449 and 400. Not 500 and 500." Based on my training and experience, I know that a "half key" is a common term for half a kilogram of drugs, and in this context, it appears that **GABELEIN** was complaining about the two half kilograms of drugs he purchased from "Rosendo V" being 51 grams and 100 grams short of half a kilogram. **GABELEIN** went on to say "The dark was short and so was the coke. So your saying [UC1] took some out of my bag?" Based on my training and experience, I believe **GABELEIN** sent the message to UC1 because he believed UC1 had taken some of the heroin (commonly known as "dark") and cocaine (commonly known as "coke") that he had purchased from

Complaint - 13
*United States v. Derel Gabelein*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

"Rosendo V."

31.    As I continued to review UC1's and **GABELEIN's** conversations, I observed that it appeared **GABELEIN** bought a puppy from UC1. **GABELEIN** then told UC1 how he thought the puppy was overdosing and was not doing well. UC1 asked if it ate a "blue" and told **GABELEIN** to give it Narcan, and **GABELEIN** denied having blues in the house. UC1 advised that she was going to come to **GABELEIN** and asked for his address. **GABELEIN** sent UC1 a Google Maps link to a location directly over Target Residence 2, but he advised that it was too late (indicating that the puppy had passed away).

32.    Based on my training, experience, and knowledge of this investigation, I believe that when UC1 referenced a "blue," she was likely using slang for a counterfeit "M-30" pill typically containing fentanyl. Furthermore, **GABELEIN** appeared to understand the reference to blues but stated that he did not keep them in the house. Based on this, I believe that **GABELEIN** likely deals in fentanyl pills and his claim that he doesn't keep them in the house where his dog lives is consistent with him having a stash location somewhere on the property. Target Residence 2 is in a fairly rural location and appears from surveillance to have a trailer on the property along with the main residence.

**Search Warrant Executed at GABELEIN's Residence on August 4, 2025**

33.    On July 30, 2025, United States Magistrate Judge Theresa L. Fricke signed a search warrant for **GABELEIN's** residence at 22899 WA-525, Greenbank, WA, 98253 (Target Residence 2).

Complaint - 14
*United States v. Derel Gabelein*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

34.     On August 4, 2025, agents executed the search warrant on **GABELEIN's** residence. In an outbuilding or shed located on the property, identified as **GABELEIN's** shop, agents recovered several packages of suspected methamphetamine, fentanyl, and other controlled substances. Agents photographed the suspected methamphetamine, fentanyl and other controlled substances (pictured below).



Complaint - 15
*United States v. Derel Gabelein*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800



35.    Agents also located, in that shed, a large amount of cash, wrapped in several clear plastic packages, consistent with proceeds of drug trafficking (pictured below).

36.    Some of the suspected methamphetamine pictured in the photographs above was weighed and field-tested by agents, testing positive for methamphetamine with

Complaint - 16
*United States v. Derel Gabelein*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

a gross weight of 1,574.3 grams (including packaging). Some of the suspected fentanyl pills, which were consistent with counterfeit blue oxycodone pills, were weighed, resulting in totals of 334.9, 97.1, and 53.9 gross grams of pills (totaling 485.9 grams including packaging).

37.    In another shed on the property, agents located two rifles. Also in the shed, located on a shelf next to the rifles, agents found school paperwork in **GABELEIN's** name.

38.    Agents also recovered documents bearing **GABELEIN's** name in the outbuilding where the controlled substances were found.

## CONCLUSION

39.    Based on the above facts, I believe probable cause exists that **Derel GABELEIN** did knowingly and intentionally conspire to distribute fentanyl and did possess with intent to distribute fentanyl, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A).

DAN RICHTER, Complainant
Special Agent
Drug Enforcement Administration

Based on the Complaint and Affidavit sworn to me via reliable electronic means, the Court hereby finds that there is probable cause to believe the defendant committed the offense set forth in the Complaint.

Dated this 4th day of August, 2025.

DAVID W. CHRISTEL
United States Magistrate Judge

Complaint - 17
*United States v. Derel Gabelein*
USAO # 2022R01047